UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


KHALASE LE'TAVIAN MULLIGAN,

   Petitioner,

v.            Case No. 3:16-cv-1006-J-34JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

   Respondents.
_____

## ORDER

### I. Status

   Petitioner Khalase Mulligan, an inmate of the Florida penal system, initiated this

action on August 1, 2016,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C.

§ 2254 (Petition; Doc. 1) in the Northern District of Florida. On August 4, 2016, the

Northern District of Florida transferred the Petition to this Court. Doc. 3. Mulligan is now

proceeding on an amended petition (Amended Petition; Doc. 10). In the Amended

Petition, Mulligan challenges a 2009 state court (Duval County, Florida) judgment of

conviction for possession of a firearm by a convicted felon. Mulligan raises five grounds

for relief. See Amended Petition at 4-12.[2]  Respondents have submitted a memorandum

in opposition to the Petition. See Respondents' Motion to Dismiss Grounds Three and

Four of Amended Petition for Writ of Habeas Corpus as Untimely and Answer to Grounds

One, Two and Five of Amended Petition (Resp.; Doc. 26) with exhibits (Resp. Ex.).

_____

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned by the
Court's electronic docketing system.

Mulligan submitted a brief in reply on August 16, 2018. <u>See</u> Reply to Answer to Petition (Reply; Doc. 44). This case is ripe for review.

## II. Relevant Procedural History

On April 17, 2009, the State of Florida (State) charged Mulligan by way of an amended information with one count of possession of a firearm by a convicted felon. Resp. Ex. A at 20. Mulligan proceeded to a jury trial, at the conclusion of which the jury found him guilty as charged, with a specific finding that Mulligan actually possessed a firearm. <u>Id.</u> at 50. On July 23, 2009, the circuit court adjudicated Mulligan to be a habitual felony offender and sentenced him to a term of incarceration of twenty years in prison, with a three-year minimum mandatory. <u>Id.</u> at 54-59.

Mulligan appealed the judgment of conviction and sentence to Florida's First District Court of Appeal. <u>Id.</u> at 75. Mulligan's appellate counsel filed an <u>Anders</u>[3] brief, Resp. Ex. F, which prompted Mulligan to file a pro se initial brief raising one issue on appeal:  there was insufficient evidence to establish actual or constructive possession of a firearm. Resp. Ex. G. The State did not file an answer brief. On October 29, 2010, the First DCA per curiam affirmed the judgment and sentence without a written opinion. Resp. Ex. H. Mulligan filed a pro se motion for rehearing, Resp. Ex. I, which the First DCA denied on January 14, 2011. Resp. Ex. J. The First DCA issued the Mandate on February 1, 2011. Resp. Ex. K.

On July 26, 2011, Mulligan filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). Resp. Ex. L at 1-19. Mulligan raised the following claims of ineffective assistance of counsel in his Rule 3.850

---

[3] <u>Anders v. State of California</u>, 386 U.S. 738 (1967).

Motion, counsel: inadequately argued a motion for judgment of acquittal (ground one); failed to argue the traffic stop was a result of racial profiling (ground two); failed to request a scienter jury instruction (ground three); failed to request a jury instruction on the knowledge element of possession of a firearm by a convicted felon (ground four); failed to object to the circuit court's response to a jury question (ground five); and failed to advise him of his speedy trial rights (ground six). Id.

On January 9, 2014, Mulligan filed an amended motion for postconviction relief (Amended Rule 3.850 Motion), in which he reasserted grounds one through six of his Rule 3.850 Motion and added the following claims: counsel failed to object when the prosecutor violated the circuit court's ruling on a defense motion in limine (ground seven); counsel failed to object to testimony from witnesses that violated the circuit court's ruling on a defense motion in limine (ground eight); the circuit court erred in denying his motion for judgment of acquittal (ground nine); and the circuit court erred in not granting his motion for new trial (ground ten). Id. at 20-57. On October 2, 2014, the circuit court dismissed as facially insufficient Mulligan's Amended Rule 3.850 Motion and gave him leave to amend. Resp. Ex. M. In response, Mulligan filed another Rule 3.850 motion (Second Amended Rule 3.850 Motion) on November 25, 2014, which raised the following claims: counsel failed to request a Nelson[4] and Faretta[5] hearing (ground one); counsel failed to impeach a witness (ground two); counsel failed to impeach a witness (ground three); and counsel failed to object to improper closing arguments (ground four). Resp. Ex. L at 58-77.

---

[4] Nelson v. State, 274 So. 2d 256 (Fla. 4th DCA 1973).
[5] Faretta v. California, 422 U.S. 806 (1975).

On April 28, 2015, the circuit court struck as unauthorized Mulligan's Second Amended Rule 3.850 Motion and denied on the merits the Rule 3.850 Motion. Id. at 82-95. On November 3, 2015, the First DCA per curiam affirmed the circuit court's order without a written opinion. Resp. Ex. P. Mulligan filed a motion for rehearing on November 18, 2015, Resp. Ex. Q, which the First DCA denied on December 17, 2015. Resp. Ex. R. The First DCA issued the Mandate on January 5, 2016. Resp. Ex. S. Mulligan sought review in the Florida Supreme Court, Resp. Ex. T., but the Florida Supreme Court dismissed the petition for review for lack of jurisdiction. Resp. Ex. U.

### III. One-Year Limitations Period

The original Petition was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d). However, Respondents contend that two claims raised in the Amended Petition, Grounds Three and Four, that were not raised in the original Petition do not relate back to the original claims and are untimely. Resp. at 16-22. The Court will address the timeliness of Grounds Three and Four below.

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise

precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Mulligan's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court recently stated:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[6] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834

---

[6] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

F.3d at 1338 (quoting <u>Richter</u>, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. <u>Richter</u>, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[7] supra, at 747–748, 111 S. Ct. 2546; Sykes,[8] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

---

[7] Coleman v. Thompson, 501 U.S. 722 (1991).
[8] Wainwright v. Sykes, 433 U.S. 72 (1977).

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[9] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity

---

[9] Murray v. Carrier, 477 U.S. 478 (1986).

of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance

prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing

Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is

easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,

which we expect will often be so, that course should be followed." Strickland, 466 U.S. at

697.

A state court's adjudication of an ineffectiveness claim is accorded great

deference.

> "[T]he standard for judging counsel's representation is a most
> deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But
> "[e]stablishing that a state court's application of Strickland was
> unreasonable under § 2254(d) is all the more difficult. The
> standards created by Strickland and § 2254(d) are both highly
> deferential, and when the two apply in tandem, review is
> doubly so." Id. (citations and quotation marks omitted). "The
> question is not whether a federal court believes the state
> court's determination under the Strickland standard was
> incorrect but whether that determination was unreasonable -
> a substantially higher threshold." Knowles v. Mirzayance, 556
> U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)
> (quotation marks omitted). If there is "any reasonable
> argument that counsel satisfied Strickland's deferential
> standard," then a federal court may not disturb a state-court
> decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at
> 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance,

556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's

performance mandated by Strickland, the AEDPA adds another layer of deference--this

one to a state court's decision--when we are considering whether to grant federal habeas

relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir.

2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v.

Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

## A. Ground One

Mulligan alleges that his trial counsel was ineffective because she inadequately argued a motion for judgment of acquittal. Amended Petition at 4. According to Mulligan, counsel failed to argue that the State did not prove that the firearm was in his actual or constructive possession. Id. Mulligan asserts that "the State failed to prove that the two other occupants of the vehicle did not have knowledge of the weapon's presence and access to the purported weapon in the vehicle, and that the gun was exclusively in Defendant's possession and was not accessible to any other individual when it was tossed out of the window of the moving vehicle." Id. But for counsel's failure to adequately argue this point, Mulligan claims the outcome of the trial would have been different.

Mulligan raised a similar claim in ground one of his Rule 3.850 Motion. Resp. Ex. L at 5-7. In denying this claim, the circuit court explained:

> Defendant's claim that counsel failed to properly argue in support of the Motion for Judgment of Acquittal is meritless. First, this Court finds counsel presented an adequate argument in support of judgment of acquittal, despite it being denied. Indeed, counsel *did* specifically argue as Defendant now suggests, in that the State failed to prove Defendant actually possessed a firearm or had it in his care, control, or custody.
>
> Assuming *arguendo* that counsel's argument was not sufficient, this Court finds there is no reasonable probability that, had counsel argued as Defendant suggests, such a Motion would have been granted and Defendant would have been acquitted. Indeed, the trial judge's reasoning for denying said Motion is telling, as the judge stated: when viewing the evidence in the light most favorable to the State, the evidence demonstrated a *prima facie* case against Defendant and the jury could make a reasonable inference, based on the evidence presented and how the jurors interpret the evidence, that Defendant possessed the firearm. In sum, "[a]lthough in

> hindsight one can speculate that a different argument may have been more effective, counsel's argument does not fall to the level of deficient performance simply because it ultimately failed." Ferguson v. State, 593 So. 2d 508, 511 (Fla. 1992). Moreover, to the extent Defendant attempts to challenge the sufficiency of the evidence against him by arguing on page six of his Motion that "the State failed to prove… Defendant was the sole person responsible for the weapon," he may not challenge the admissibility, validity, or sufficiency of the evidence against him in a motion seeking postconviction relief. Betts v. State, 792 So. 2d 589, 590 (Fla. 1st DCA 2001); Jackson v. State, 640 So. 2d 1173, 1174 (Fla. 2d DCA 1994). Accordingly, Ground One is denied.

Id. at 86-87 (record citations omitted). The First DCA per curiam affirmed the denial of this claim without a written opinion. Resp. Exs. P; S.

To the extent that the First DCA decided the claim on the merits,[10] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Mulligan is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of the claim is not entitled to deference, Mulligan's claim in Ground One is without merit. In reviewing a motion for judgment of acquittal, trial courts must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have

---

[10] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979); <u>see also</u> <u>Gudinas v. State</u>, 693 So. 2d 953, 962 (Fla. 1997) (quoting <u>Taylor v. State</u>, 583 So. 2d 323, 328 (Fla. 1991) (holding a motion for judgment of acquittal should not be granted unless "there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law."). Under Florida law, it is unlawful for a convicted felon "to own or to have in his or her care, custody, possession, or control any firearm, ammunition, or electric weapon or device, or to carry a concealed weapon, including a tear gas gun or chemical weapon or device." § 790.23(1), Fla. Stat. Possession can be either actual or constructive. <u>Swain v. State</u>, 226 So. 3d 1002, 1003 (Fla. 1st DCA 2017). Notably, "[i]n a car that is jointly occupied, knowledge and the ability to control the firearm may not be inferred but must be established by independent proof," which "can consist of incriminating statements or circumstances which tend to support the inference." <u>A.P. v. State</u>, 250 So. 3d 799, 802 (Fla. 2d DCA 2018) (citing <u>K.A.K. v. State</u>, 885 So. 2d 405, 407 (Fla. 2d DCA 2004)).

The record reflects Mulligan's counsel argued the State failed to prove either actual or constructive possession, refuting Mulligan's contentions in Ground One. Resp. Ex. D at 88-89. Moreover, when viewed in a light most favorable to the State, the evidence presented at trial could have led a reasonable trier of fact to find actual and constructive possession beyond a reasonable doubt. While tailing a vehicle with expired tags, Officers Scott Tucker and David Cervone observed three occupants in a vehicle, one driver, one front seat passenger, and Mulligan in the right rear seat. <u>Id.</u> at 26-28, 46-48. At one point, the suspect vehicle slowed down, and the officers witnessed the rear passenger, Mulligan, throw a firearm outside the right rear window. <u>Id.</u> at 29, 47-48. After conducting

a traffic stop, Mulligan informed Cervone that he threw the firearm outside of the vehicle because he was a convicted felon. Id. at 53-55, 66. Mulligan also asked Cervone to write in his report that the firearm was not loaded; however, the magazine of the firearm did contain live rounds. Id. at 53-54. Accordingly, in considering the motion for judgment of acquittal, not only did the Court have the testimony of two officers who observed Mulligan throw the firearm from the car, but also had Mulligan's admission to possessing and throwing the firearm from the vehicle. Although Mulligan was a passenger in a vehicle with two other individuals, the above cited evidence is independent proof of Mulligan's knowledge and ability to control the firearm. See A.P., 250 So. 3d at 802. Based on this evidence, there is no reasonable probability the outcome of the trial would have been different because the circuit court would not have granted the motion for judgment of acquittal. See Jackson, 443 U.S. at 319 (1979); Gudinas, 693 So. 2d at 962. Mulligan has failed to demonstrate either deficient performance or prejudice; therefore, his claim in Ground One is due to be denied.

**B. Ground Two**

In Ground Two, Mulligan avers that his trial counsel was ineffective because she "failed to develop [a] defense at trial regarding racial profiling by law enforcement agents who initiated the stop of the vehicle." Amended Petition at 5. According to Mulligan, there was no probable cause for the officers to conduct a traffic stop. Id. at 6. Mulligan maintains that the two Caucasian officers pulled over the vehicle he was a passenger in because all three individuals in the vehicle were African-Americans. Id. Had counsel raised this issue via a motion to suppress, Mulligan contends the outcome of the proceedings would have been different. Id.

Mulligan raised a similar claim in his Rule 3.850 Motion. Resp. Ex. L at 7-9. The circuit court denied this claim, stating:

> This argument is utterly without merit. First, Defendant has presented this Court with no support or evidence demonstrating the officers stopped the vehicle based upon the occupants' race, nor does the record indicate such. Indeed, Defendant himself acknowledges in his Motion the officers observed one of the occupants inside the vehicle throw an object from the vehicle and the officers stopped the vehicle because of an expired license plate tag.
>
> As to the merits of Defendant's claim, this Court notes that, to conduct a lawful traffic stop, only reasonable suspicion of criminal or illegal activity, in the mind of the law enforcement officer, is required. See § 901.151(2), Fla. Stat. (2005); E.W. v. State, 873 So. 2d 485, 488 (Fla. 1st DCA 2004); State v. Herrera, 991 So. 2d 390, 392 (Fla. 3d DCA 2008) (citing Terry v. Ohio, 392 U.S. 1 (1968)). Indeed, "[i]f a police officer observes a motor vehicle operated in an unusual manner, there may be justification for a stop even when there is no violation of vehicular regulations and no citation is issued." Finizio v. State, 800 So. 2d 347, 349 (Fla. 4th DCA 2001) (citing Baily v. State, 319 So. 2d 22 (Fla. 1975)); [sic] State, Dep't of Highway Safety & Motor Vehicles v. DeShong, 603 So. 2d 1349 (Fla. 2d DCA 1992)).
>
> Here, during trial, Officer Scott Tucker of the Jacksonville Sheriff's Office testified he and his partner, Officer David Cervone, pursued the vehicle Defendant was riding in because the vehicle had an expired tag on it. After Officer Tucker observed one of the vehicle's occupants throw a firearm out the window, the officers conducted a felony stop because, after having seen the firearm, there existed a potential for danger. Officer Cervone also testified during trial, and he stated he and Officer Tucker conducted a traffic stop on the vehicle Defendant was riding in because the vehicle bore an expired license plate. After Officer Cervone observed one of the vehicle's occupants throw a firearm out the rear window of the vehicle, he and Officer Tucker decided to conduct a felony stop of the vehicle because of the presence of a firearm.
>
> Based on Officer Tucker's and Officer Cervone's trial testimony indicating the vehicle's license tag was expired, this

> Court finds the officers lawfully stopped the vehicle because they observed criminal activity occur in their presence, i.e., a violation of the traffic laws in driving with an expired license plate tag. Therefore, had counsel attempted to argue a defense that the stop was illegal because the officers unlawfully racially-profiled Defendant, such a defense would have been wholly unsupported by the evidence and impermissible. <u>See</u> <u>Vining v. State</u>, 827 So. 2d 201, 213 (Fla. 2002) (citing <u>Melendez v. State</u>, 612 So. 2d 1366, 1369 (Fla. 1992)). Ground Two is denied.

<u>Id.</u> at 87-89 (record citations omitted). The First DCA per curiam affirmed the denial of this claim without a written opinion. Resp. Exs. P; S.

To the extent that the First DCA decided the claim on the merits,[11] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Mulligan is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of the claim is not entitled to deference, the claim in Ground Two is meritless. So long as an officer has probable cause to believe that a traffic violation occurred, the actual motivations of the individual officer involved would not invalidate an objectively justifiable stop under the Fourth Amendment. <u>Whren v. United States</u>, 517 U.S. 806 (1996); <u>see also</u> <u>United States v. Holloman</u>, 113 F.3d 192, 194 (11th Cir. 1997) ("[T]he constitutional reasonableness of

---

[11] In accordance with <u>Wilson</u>, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. <u>Wilson</u>, 138 S. Ct. at 1194.

a traffic stop must be determined irrespective of intent, whether of the particular officers involved or of the theoretical reasonable officer.") (internal quotation marks omitted).

The record reflects that both officers involved in the traffic stop testified that the vehicle had an expired tag and that the driver was ultimately given a citation for the expired tag. Resp. Ex. D at 26-27, 36, 46. Based on these facts, the officers had probable cause to believe the vehicle violated a Florida traffic law. See Gomez v. State, 748 So. 2d 352, 352 (Fla. 3d DCA 1999) ("[T]he traffic stop was lawful because the officer had probable cause to believe that the defendant had violated the traffic code by driving a vehicle with an expired temporary tag."). Having established probable cause for the traffic stop, the subjective motivations of the officers is irrelevant to the constitutionality of the traffic stop. See Whren, 517 U.S. 806. As such, any motion to suppress or objection raised on the grounds of racial profiling would have been meritless. Counsel cannot be deemed deficient for failing to raise a meritless argument. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). Accordingly, the Amended Petition is due to be denied as to Ground Two.

### C. Grounds Three and Four

As Ground Three, Mulligan contends that his counsel was ineffective because she failed to request a jury instruction on "scienter." Amended Petition at 7-8. Mulligan asserts that "knowledge by Defendant of the actual presence of the firearm was essential for a lawful conviction of the charged offense, possession of a firearm by a convicted felon."

Id. at 7. According to Mulligan, the existence of three people in the vehicle led to a reasonable inference that "any of the other two individuals could have reasonably thrown the weapon out of the vehicle." Id. Mulligan maintains that this purported lack of evidence of his knowledge of the actual presence of the firearm entitled him to a jury instruction on "scienter." Id. In Ground Four, Mulligan essentially raises the same argument but uses different terms.[12] He claims that his counsel was ineffective for failing to request a jury instruction on the knowledge element of possession of a firearm by a convicted felon. Id. at 9.

Respondents argue that these claims are untimely because Mulligan did not raise them in his original timely Petition and by the time he filed his Amended Petition the one-year statute of limitations had expired. Resp. at 16-22. Additionally, Respondents contend that these claims do not relate back to any of the original, timely filed claims raised in the Petition. Id.

Federal habeas petitions are civil in nature and are governed by the Federal Rules of Civil Procedure. See Habeas Corpus Rule 11; Fed. R. Civ. P. 81(a)(4). As such, a habeas petition may be amended as provided in the rules of procedure applicable to civil actions. See 28 U.S.C. § 2242. Under the Federal Rules of Civil Procedure, pleading amendments relate back to the date of the original pleading when "the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). An amendment

---

[12] Scienter and knowledge are synonyms in this context. See *Scienter*, Black's Law Dictionary (3rd Pocket Ed. 2006) (defining scienter as "[a] degree of knowledge that makes a person legally responsible for the consequences of his or her act or omission; the fact of any act's having been done knowingly, esp. as a ground for civil damages or criminal punishment.").

to a habeas petition may relate back "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts." Mayle v. Felix, 545 U.S. 644, 664 (2005). A new claim, however, does not meet the standard and, thus, does not relate back "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Id. 545 U.S. at 650. The terms "conduct, transaction, and occurrence" are to be narrowly construed and are not synonymous with "trial, conviction or sentence." Id. 545 U.S. at 664.

The following procedural history is relevant to the one-year limitations issue. On October 29, 2010, the First DCA per curiam affirmed the judgment and sentence on direct appeal without a written opinion. Resp. Ex. H. Mulligan filed a pro se motion for rehearing, Resp. Ex. I, which the First DCA denied on January 14, 2011. Resp. Ex. J. Accordingly, Mulligan's judgment became final ninety days after the First DCA denied his motion for rehearing, which was April 15, 2011. See Lowe v. Fla Dep't of Corr., 679 F. App'x 756, 757-58 (11th Cir. 2017) (concluding petitioner's conviction became final ninety days after the denial of his motion for rehearing on direct appeal). On July 26, 2011, 102 days into his AEDPA one-year limitations period, Mulligan filed his Rule 3.850 Motion, which tolled the statute of limitations. See 28 U.S.C. § 2244(d)(2). The First DCA affirmed the circuit court's denial of Mulligan's Rule 3.850 Motion, issuing its Mandate on January 5, 2016. Resp. Ex. S. The one-year statute of limitation then began to run again. See Nyland v. Moore, 216 F.3d 1264, 1267 (11th Cir. 2000) (noting pursuant to Florida law, a circuit court's denial of a postconviction motion is pending until the mandate is issued).

Mulligan filed his initial habeas petition on August 1, 2016, 310 days into his one-year limitations period. Petition. The filing of the Petition did not toll the statute of

limitations period. See Duncan v. Walker, 533 U.S. 167, 173-74, 181-82 (2001) (holding that a federal habeas petition is not an "application for State post-conviction or other collateral review" within the meaning of § 2244(d)(2) and therefore does not toll the limitation period). Mulligan did not file the Amended Petition until February 17, 2017, months after the one-year statute of limitations expired. Amended Petition. Accordingly, any new claims raised in the Amended Petition are due to be denied as untimely unless the claims relate back to those raised in his initial Petition. See Fed. R. Civ. P. 15(c)(2).

Mulligan raised the following claims for relief in his original Petition: counsel was ineffective for inadequately arguing a motion for judgment of acquittal (ground one); counsel was ineffective for failing to investigate and argue that the traffic stop was the product of racial profiling (ground two); and counsel was ineffective for failing to advise him of his speedy trial rights (ground three). See Petition at 6-9. None of these earlier, timely grounds for relief relate to counsel's alleged failure to seek a jury instruction on knowledge or scienter. The claims raised in Grounds Three and Four assert new grounds "for relief supported by facts that differ in both time and type from those the original pleading set forth." Mayle, 545 U.S. at 650. As such, the claims in Grounds Three and Four do not relate back to the original Petition and, therefore, the claims are untimely and relief on them is due to be denied. See id.; Fed. R. Civ. P. 15(c)(2).

Nevertheless, even if timely, the state court's adjudication of these claims is entitled to deference. Mulligan raised these claims in his Rule 3.850 Motion. Resp. Ex. L at 9-12. The circuit court denied the claim raised here in Ground Three, explaining in pertinent part:

> [T]his Court finds the State presented ample evidence at trial
> demonstrating Defendant had possession of the firearm when

he, as the rear passenger, had it and threw it from the vehicle's window. Most importantly, Defendant himself admitted that he threw the firearm out the window. Thus, had counsel requested such an instruction as Defendant now suggests, it would have been without merit because there was no evidence presented to support the jury receiving it. See Mathis v. State, 973 So. 2d 1153, 1157 (Fla. 1st DCA 2006) (quoting Mathews v. State, 799 So. 2d 265, 266 (Fla. 1st DCA 2001)) [sic] (stating that, in terms of whether defense counsel was ineffective for failing to request a specific jury instruction,"[u]pon request, a defendant is entitled to a jury instruction on any theory of defense the substantive evidence supports, however weak or improbable his testimony may have been")). Because the jury received no evidence during trial supporting Defendant's contentions that he did not have actual possession of the firearm, counsel did not render deficient performance and Ground Three is denied.

Id. at 89-91 (record citations omitted). It likewise denied the claim raised here in Ground

Four, stating:

> For the same reasons set forth in Ground Three, this ground for relief is similarly denied. Neither party presented any evidence during trial demonstrating Defendant did not have knowledge of the firearm in the vehicle. Indeed, Defendant admitted he possessed the firearm and threw it out of the vehicle's window. Moreover, because the jury found Defendant actually possessed the firearm, this Court finds that any instruction on whether Defendant knew the firearm was in the vehicle would have been completely futile. Since the jury found Defendant possessed the firearm, it stands to reason the jury found Defendant had knowledge of it and knowingly possessed it. Ground Four is denied.

Id. at 91. The First DCA per curiam affirmed the denial of these claims without a written

opinion. Resp. Exs. P; S.

To the extent that the First DCA decided these claims on the merits,[13] the Court

will address these claims in accordance with the deferential standard for federal court

---

[13] In accordance with Wilson, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. Wilson, 138 S. Ct. at 1194.

review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of these claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Mulligan is not entitled to relief on the basis of these claims.

Even assuming the state appellate court's adjudication of these claims is not entitled to deference, Mulligan is still not entitled to relief. Knowledge of possession, or scienter, is an element of possession of a firearm by a convicted felon. Creamer v. State, 605 So. 2d 541, 542 (Fla. 1st DCA 1992). "That element has been included in the standard jury instruction since 1992." Johnson v. State, 890 So. 2d 432, 433 (Fla. 4th DCA 2004). Here, the circuit court instructed the jury that the second element of the offense was whether Mulligan "knowingly owned or had in his care, custody, possession or control a firearm." Resp. Ex. A at 37 (emphasis added). Accordingly, the record refutes Mulligan's claims because the circuit court did instruct the jury on scienter. As such, Mulligan cannot demonstrate deficient performance. Additionally, the Court notes that Mulligan admitted to an officer that he threw the firearm from the vehicle because he was afraid, as a convicted felon, of being caught with it. Resp. Ex. D at 53-55, 66. This evidence went unrebutted and demonstrated Mulligan's actual knowledge of the firearm. For the above stated reasons, the claims in Grounds Three and Four are due to be denied.

## D. Ground Five

Lastly, Mulligan asserts that his counsel was ineffective because she failed to advise him of his speedy trial rights under Florida law. Amended Petition at 10-12. According to Mulligan, his "counsel omitted to inform his client of the effects of an expiration of speedy trial time period, waiver by continuances, the effects and/or defects of filing a demand for speedy trial, and the Defendant's due process rights afforded under the Speedy Trial Act as guaranteed by the United States and Florida Constitutions." Id. at 10. Mulligan further asserts that the circuit court erred in striking his pro se motions seeking to enforce his speedy trial rights because it did not first inquire with Mulligan whether an adverse relationship existed between his counsel and him. Id. at 11. Alternatively, Mulligan argues his counsel was ineffective because she failed to object to the circuit court's incorrect statement of the law concerning Mulligan's ability to file pro se motions. Id. at 11-12. Had counsel properly advised him, Mulligan claims the charge would have been dismissed or he would have proceeded to trial within the speedy trial time frame. Id. at 12.

Mulligan raised a similar issue in his Rule 3.850 Motion. Resp. Ex. L at 15-17. In denying this claim, the circuit court stated:

> A defendant's right to a speedy trial is explained as follows:
>
>> Except as otherwise provided by this rule, and subject to the limitations imposed under subdivisions (e) and (f), every person charged with a crime shall be brought to trial within 90 days of arrest if the crime charged is a misdemeanor, or within 175 days of arrest if the crime charged is a felony.

Fla. R. Crim. P. 3.191(a) (2005). However, "[i]t is axiomatic under Florida law that a trial continuance granted at the request of the accused constitutes a waiver of the right to a speedy trial under rule 3.191." State v. Gibson, 783 So. 2d 1155, 1158 (Fla. 5th DCA 2001) (citations omitted). Continuances made by a defendant's attorney are made on behalf of the attorney's client and, even if the continuance was made against the defendant's wishes, the continuance is charged to the defendant. Wright v. State, 396 So. 2d 864, 864-65 (Fla. 3d DCA 1981); see also Jackson v. State, 448 So. 2d 577, 577-78 (Fla. 5th DCA 1984) (stating *pro se* demand for speedy trial is trumped by attorney's request for continuance because "[w]hen a defendant charged with a crime has an attorney it is the responsibility of the attorney to know when the defense is ready or not ready for trial").

Foremost, although Defendant avers he never consented to a waiver of his speedy trial rights, this Court finds that, by virtue of counsel's request for a continuance, Defendant's speedy trial rights were waived. See Gibson, 783 So. 2d at 1158. Pursuant to prevailing case law, Defendant's counsel controlled whether or not the Defense was prepared to proceed to trial. As to Defendant's argument that counsel failed to advise him of his speedy trial rights, this Court finds he has failed to establish that, had counsel so advised him, such advice would have changed the outcome of the instant case, as required by Strickland. Defendant has merely alleged as his grounds for prejudice that, had counsel advised him about said issues, the charges against him would have then been dismissed. Defendant is mistaken. Florida's Speedy Trial rules do not read as Defendant alleges. Rather, there exist promulgated procedures which must be adhered with before charges may be dismissed. See Fla. R. Crim. P. 3.191 (2005). Because Defendant has failed to establish specific prejudice to his case, such that the outcome of his trial would have been different had counsel advised him of speedy trial, this portion of his argument is without merit. See Davis v. State, 736 So. 2d 1156, 1159 (Fla. 1999) (holding postconviction relief not warranted on basis of "tenuous speculation").

As to Defendant's latter claim alleging the trial court erred, this Court finds claims of trial court error are not cognizable by way of a rule 3.850 motion seeking

> postconviction relief. <u>Johnson</u>, 985 So. 2d 1215.[14] In view of
> the foregoing, therefore, Ground Six is denied.

<u>Id.</u> at 93-94. The First DCA per curiam affirmed the denial of this claim without a written opinion. Resp. Exs. P; S.

To the extent that the First DCA decided the claim on the merits,[15] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Mulligan is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of the claim is not entitled to deference, this claim is without merit. Florida Rule of Criminal Procedure 3.191 governs a defendant's right to speedy trial in the Florida criminal judicial system. Pursuant to Rule 3.191(a), the State shall bring a defendant charged with a felony to trial within 175 days. "This right is not self-executing and requires a defendant to take affirmative action to avail himself of the remedies provided under the statute." <u>Dillard v. Sec'y, Dep't of Corr.</u>, 440 F. App'x 817, 819 (11th Cir. 2011) (citing <u>State v. Nelson</u>, 26 So.3d 570, 574 (Fla. 2010)). To this end, Rule 3.191(b) provides that a defendant has the right to demand a trial within sixty days of filing a Demand for Speedy Trial.

---

[14] <u>Johnson v. State</u>, 985 So. 2d 1215 (Fla. 1st DCA 2008).
[15] In accordance with <u>Wilson</u>, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. <u>Wilson</u>, 138 S. Ct. at 1194.

Notably, "[under Florida law,] a waiver of speedy trial by counsel is binding on the defendant, 'even though done without consulting him and even against the client's wishes.'" Dillard, 440 F. App'x at 820 (quoting State v. Kruger, 615 So.2d 757, 759 (Fla. 4th DCA 1993)); see also New York v. Hill, 528 U.S. 110, 115 (2000) (holding that defense counsel could waive defendant's right to be brought to trial within the 180-day period specified under the Interstate Agreement on Detainers, by agreeing to a trial date outside that period, even without the express consent of defendant). Moreover, "'[a] claim of ineffective assistance of counsel based on a failure to seek discharge because of a violation of the speedy trial rule is extremely tenuous where the State had available the recapture window of Rule 3.191(p)(3),' which was added in 1985 to give 'the system a chance to remedy a mistake.'" Remak v. State, 142 So. 3d 3, 6 (Fla. 2d DCA 2014) (quoting Hammond v. State, 34 So. 3d 58, 60 (Fla. 4th DCA 2010); Florida Bar Re: Amend. to Rules-Criminal Procedure, 462 So. 2d 386 (Fla. 1984)).

Mulligan's argument that counsel failed to advise him about his speedy trial rights, which led to the waiver of those rights, fails because counsel was entitled to waive Mulligan's speedy trial rights even over his objection. See Dillard, 440 F. App'x at 820. Therefore, whether counsel properly advised Mulligan is irrelevant to the propriety of counsel's decision to waive his speedy trial rights. Moreover, Mulligan cannot demonstrate prejudice because he does not provide any support for a conclusion that the State would not have been able to bring him to trial during the recapture period, particularly in light of the fact that the two eye-witnesses were officers presumably capable of appearing at any time. As such, his claim of prejudice is wholly speculative and insufficient to warrant federal habeas relief. See Tejada v. Dugger, 941 F.2d 1551,

1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim).

To the extent Mulligan argues trial court error concerning the striking of his pro se pleadings, this claim fails as a matter of law. In Florida, a defendant's pro se pleadings filed while represented by counsel are nullities unless "the defendant makes specific allegations that would give rise to a clear adversarial relationship with his counsel." Sheppard v. State, 17 So. 3d 275, 282 (Fla. 2009). Neither Mulligan's pro se notice of expiration of speedy trial period nor his pro se motion to discharge contain any allegations that would give rise to a clear adversarial relationship with his counsel. Resp. Ex. A at 23-24. Therefore, the circuit court properly struck his pro se pleadings as nullities. Sheppard, 17 So. 3d at 282. Mulligan's alternative argument that his counsel should have objected to the circuit court decision to strike his pleadings is likewise without merit because counsel cannot be ineffective for failing to raise a meritless challenge. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573. Accordingly, Mulligan's claim in Ground Five is due to be denied.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Mulligan seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Mulligan "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282

(2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Amended Petition (Doc. 10) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3.      If Mulligan appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 13th day of February, 2019.


MARCIA MORALES HOWARD
United States District Judge


Jax-8

C:      Khalase Mulligan, #J39529
        Anne C. Conley, Esq.